```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Dennis Haskell

    v.                                      Civil No. 13-cv-482-JL
                                          Opinion No. 2015 DNH 016

Carolyn W. Colvyn, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Dennis Haskell has appealed the Social Security Administration's denial of his application for a period of disability and disability insurance benefits, claiming an onset date of January 1, 2010. An administrative law judge at the SSA ("ALJ") ruled that, despite Haskell's severe impairments (chronic obstructive pulmonary disease, asthma, and alcohol abuse, among others), he retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council later denied Haskell's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the final decision on Haskell's application, see id. § 404.981. Haskell appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Haskell has filed a motion to reverse the decision. See L.R. 9.1(b)(1). He argues that the ALJ erred in finding that

Haskell retains the RFC for light work, particularly in light of the contrary opinions of his treating physician. Haskell further argues that the Appeals Council erred by failing to consider the fact that, between the time of the ALJ's decision and the Council's refusal to review it, Haskell had reached the "advanced age" of 55. See 20 C.F.R. § 404.1563(e). The Commissioner of the SSA has cross-moved for an order affirming these decisions, see L.R. 9.1(d), arguing that neither the ALJ nor the Appeals Council erred in handling Haskell's case. For the reasons explained fully below, the court agrees with the Commissioner as to the ALJ's decision, and rules that it lacks jurisdiction to consider the Appeals Council's decision.

**RFC assessment.** As just noted, the ALJ determined that, despite Haskell's impairments, he retained the RFC for light work, with specified non-exertional limitations. Haskell argues that this finding is "improperly based only on [the ALJ's] lay assessment of the medical evidence and the impermissible substitution of his lay judgment for that of the medical expert," i.e., Haskell's treating physician, Dr. Michael Mattin. It is generally true that "an ALJ, as a lay person is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 17 (1st Cir. 1996). Nevertheless, "where the medical evidence shows relatively little physical impairment, an

2

ALJ can permissibly render a commonsense judgment about functional capacity even without a physician's assessment" to support it.  Id.  As fully explained below, this is such a case.

It should be noted that, while Haskell asserts that Mattin made an "explicit finding that [Haskell] is precluded from performing light work," that finding, as such, does not appear in Mattin's records.  In June 2012, Mattin completed a "medical source statement of ability to do work-related activities" on a form provided by the SSA.  On that form, Mattin checked boxes indicating that Haskell was limited to occasionally lifting or carrying less than ten pounds and standing or walking only 2 hours out of an 8-hour workday, and also needed to periodically alternate sitting and standing to relieve pain and discomfort.  But even though the form provided a space for Mattin to explain these findings--and specifically directed him to explain the lifting and carrying limitations and the need to alternate sitting and standing--he provided no such explanation, simply leaving those spaces blank.  Mattin also checked boxes indicating that Haskell could never climb, balance, crouch, or crawl, and could only occasionally kneel or stoop but, again, those findings are also unexplained by anything on the form.

Unsurprisingly, then, the ALJ gave Mattin's responses "little weight because his opinion is a pro forma statement of

[Haskell's] functional limitations without any elaboration as to what objective medical signs or symptoms led [Mattin] to conclude that [Haskell] was limited in the manner [Mattin] articulated." This observation is right on the money, and flies in the face of Haskell's claim that the ALJ failed to "provide an adequate reason for rejecting Dr. Mattis' opinion." This court has repeatedly ruled, in fact, that "[w]hen an opinion is given in cursory fashion, the ALJ can properly give it less weight." McGrath v. Astrue, 2012 DNH 060, 13 n.13 (citing 20 C.F.R. § 404.1527(d)(3)); see also, e.g., Gaudette ex rel. D.P. v. Colvin, 2014 DNH 022, 9; Morin v. Astrue, 2011 DNH 091, 14-15.

Haskell, predictably, invokes the SSA's rule as to the deference generally due the opinion of a claimant's treating physician. See 20 C.F.R. § 404.1527(d)(2). But that rule applies only insofar as such an opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [his] case record." Id. Haskell does not point to any support in the record for Mattin's opinions as to Haskell's physical limitations--indeed, while his reply memorandum asserts that these opinions are "supported by Dr. Mattin's treatment notes, as well as other evidence of record," that statement is,

4

tellingly, unaccompanied by any record citation.[1]  So the ALJ's decision to give little weight to Mattin's opinions because they lacked "elaboration as to what objective medical signs or symptoms led [Mattin] to conclude that [Haskell] was limited in the manner [Mattin] articulated" was both sufficiently supported and sufficiently explained.  See, e.g., Carrion v. Colvin, 2014 DNH 174, 6-8 (upholding ALJ's decision to reject treating physician's opinions as unsupported when claimant failed to point to any support in physician's notes or elsewhere).

For essentially the same reason, the ALJ did not err in finding that Haskell retained the RFC for light work, even in the absence of a supporting medical source opinion.  Again, an ALJ can rely solely on his own common-sense judgment about the claimant's RFC so long as "the medical evidence shows relatively little physical impairment."  Manso-Pizarro, 76 F.3d at 17.  Here, as just discussed, nothing in Haskell's medical records

---

[1] Haskell emphasizes his testimony before the ALJ that he "experiences shortness of breath from sitting too long" and "excessive standing or walking exacerbates his pain."  But the ALJ specifically found that Haskell's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment, and, furthermore, that Haskell's "allegations of work-related functional limitations . . . [were] somewhat overstated."  Haskell does not suggest that these conclusions were in error and, obviously, a claimant's discredited testimony as to his limitations cannot save his treating physician's otherwise unsupported opinions as to those limitations.  See, e.g., Allard v. Colvin, 2014 DNH 034, 12.

5

(aside from the unexplained conclusions that Mattin expressed in filling out the form) suggests a meaningful exertional problem.

To the contrary, Mattin's notes of his examinations of Haskell throughout 2010 (after he claims to have become disabled on January 1 of that year) report that he had been "exercising" or "working around the house" and do not refer to any physical limitations.  It was not until September 2011--more than 19 months after the claimed onset of his disability, and nearly 5 months after he had applied for disability benefits--that Haskell reported shortness of breath (or any other exertional problem) to Mattin (or any medical professional).  Haskell went on to make the same complaint just three more times:  at a medical appointment in June 2011, when a nurse practitioner attributed it to a bout of bronchitis; at his annual physical in September 2011, when he also complained (for the first time, so far as the record indicates) of joint pain, back pain, stiffness, poor balance, and disturbed coordination, but also said he had been exercising and mentioned that he was "working on getting disability"; and at a visit to Mattin in April 2012.  But neither these reports, nor anything else in Haskell's records save Mattin's June 2012 functional assessment, mentions any other physical limitation.

The medical evidence, then, "shows relatively little physical impairment," allowing the ALJ to "render a commonsense judgment about functional capacity even without a physician's assessment." Manso-Pizarro, 76 F.3d at 17. Indeed, applying this rule, the Court of Appeals has upheld an ALJ's assessment of a claimant's RFC under similar circumstances. See Roberts v. Barnhart, 67 Fed. App'x 621, 624 (1st Cir. 2003) (affirming ALJ's decision "that an expert was not required for evaluation of claimant's physical RFC," despite her undisputed diagnosis with a disorder causing joint pain and testimony about its disabling effects, where "the record indicates very few complaints of joint pain"); Stephens v. Barnhart, 50 Fed. App'x 7, 10-11 (1st Cir. 2002) (upholding ALJ's finding that claimant "was capable of lifting up to fifty pounds despite an examining physician's RFC evaluation" to the contrary, and the absence of any competing evaluation, where the physician's "report provides no explanation for [its] low estimation of [claimant's] capacity to lift" and the medical record lacked any other "comment on [claimant's] ability to lift"). Thus, while Manso-Pizarro recognizes but a "narrow exception to the general rule that an expert opinion is required" to determine the claimant's RFC, Jenna v. Colvin, 2014 DNH 074, 11, that exception applies here.

Haskell offers no reason why it should not--aside from a single statement in his reply brief that his "severe impairments were not the kind that would allow the ALJ, as a layperson, to craft an RFC on his own." But, as this court has explained, the fact that an impairment is severe does not in and of itself make it disabling, see Eaton v. Astrue, 2009 DNH 102, 20 (citing Foster v. Brown, 853 F.2d 483, 488-89 (6th Cir. 1988)), so, as cases like Roberts and Stephens indicate, the existence of a severe impairment does not in and of itself prevent the ALJ from determining the claimant's RFC without a supporting medical assessment. Cf. Hunter v. Barnhart, 56 Fed. App'x 262, 265-66 (7th Cir. 2003) (affirming ALJ's decision accepting physician's diagnosis of claimant with COPD, but rejecting physician's restriction of claimant to sedentary work, given absence of support in medical records). Again, that is appropriate so long as the medical evidence shows relatively little physical impairment, as it does here.

Haskell also complains that "the ALJ failed to provide any specific rationale explaining why [Haskell] retains the RFC to perform light work." But the ALJ expressly stated that his RFC assessment was "in accord with," among other things, Haskell's "previous ability to work at gainful levels even with his impairments"--which, the ALJ observed, "were present at

approximately the same level of severity since at least 2005" and included stints as a plumber, a forklift operator, and a manual laborer.  The ALJ also cited Haskell's "continuing to search for employment and having collected unemployment compensation" (which, as the ALJ noted, required Haskell to affirm that he was "ready, willing and able to work") and his "continued smoking of cigarettes and marijuana" despite his respiratory conditions.

Haskell does not question any of this reasoning.  So, while perhaps none of the ALJ's observations, taken alone, could have supported the finding that Haskell could do light work, they provide substantial evidence for that conclusion when taken together--particularly in light of the dearth of references to exertional limitations in Haskell's medical records, as just discussed at length.  See, e.g., Bergeron v. Astrue, 2012 DNH 102, 18-20 (affirming ALJ's RFC determination, despite the absence of a supporting medical opinion "in specific functional terms," in light of claimant's "relatively normal" medical records and other evidence of her capabilities).  Because Haskell has failed to identify any error in the ALJ's RFC determination, his motion to reverse the ALJ's decision is denied.

**Appeals Council.**  Haskell also argues that the Appeals Council erred by failing to treat him as a "[p]erson of advanced age," defined as "age 55 or older," 20 C.F.R. § 404.1563(e), even

9

though he celebrated his 55th birthday between the date of the ALJ's decision and the date of the Appeals Council's denial of Haskell's request to review it.  The recognition that he had reached advanced age, Haskell argues, would have resulted in a presumption that he was disabled under the SSA's Medical-Vocational Guidelines.  See 20 C.F.R. pt. 404, subpt. B, app. 2.  At a minimum, Haskell maintains, the Appeals Council should have considered whether his age (which was about 54½ at the time he asked for review) placed him in a "borderline situation" requiring the Council to "consider whether to use the older age category [i.e., advanced age] after evaluating the overall impact of all the factors of [his] case."[2]  Id. § 404.1563(b).

This court lacks jurisdiction to hear this claim.  As the Court of Appeals has recognized, "an Appeals Council decision refusing review has all the hallmarks of a discretionary decision" which is, as a matter of administrative law, only "reviewable to the extent that it rests on an explicit mistake of law or other egregious error," i.e., "an articulated but severely mistaken view."  Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  Here--per its customary practice, see id.--the Appeals Council

---

[2] Importantly, Haskell does not contend that the ALJ erred by failing to apply the "borderline situation" rule (at the time of the hearing, Haskell had just turned 54).

10

did not articulate any reason for declining Haskell's request that it review the ALJ's decision.

This is in contrast to Mills, where the Council announced that medical records the claimant had submitted to it, but not to the ALJ, were "'consistent' with those in the record before the ALJ and 'thus' did not provide a basis for disturbing the ALJ's decision." Id. at 3.  Accordingly, the Court of Appeals reasoned that "if the Appeals Council mistakenly rejected new evidence on the ground that it was not material, . . . a court ought to be able to correct that mistake." Id. at 6.  Crucially, the court explained that "[t]his is so even though we assume that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id.

Here, again, the Appeals Council gave no specific reason for its refusal of Haskell's request for review the ALJ's decision, stating simply that "the reasons [Haskell] disagree[s] with the decision . . . do[] not provide a basis for changing" it.  In seeking review, Haskell likewise gave no specific reason for disagreeing with the ALJ's decision, stating simply that "there are multiple errors by the [ALJ] which require a remand." Haskell also never asked the Appeals Council to apply the "borderline situation" rule or otherwise made an issue of his age (and, again, he has never argued at that the ALJ should have

applied the "borderline situation" rule, <u>see</u> note 2, <u>supra</u>). This state of affairs makes the Appeals Council's refusal to review the ALJ's decision "effectively unreviewable" by this court.  <u>Mills</u>, 244 F.3d at 6.

**Conclusion.**  For the foregoing reasons, Haskell's motion to reverse the ALJ's decision[3] is DENIED and the Commissioner's motion to affirm the ALJ's decision[4] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

   **SO ORDERED.**

           _/s/ Joe Laplante_
           Joseph N. Laplante
           United States District Judge

Dated: February 2, 2015

cc: Tamara N. Gallagher, Esq.
   Karen B. Fitzmaurice, Esq.
   T. David Plourde, AUSA

---

[3] Document no. 9.

[4] Document no. 12.